UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BETHANY PEREZ                                          CIVIL ACTION

VERSUS                                                 NO. 21-1789

AQUATERRA CONTRACTING, LLC,                            SECTION "R" (3)
ET AL.

## ORDER AND REASONS

Before the Court is plaintiff Bethany Perez's motion to remand this case to state court.[1] Defendants Aquaterra Contracting, LLC and Cayo, LLC (collectively "Cayo/Aquaterra") oppose the motion.[2] Defendants also move to strike certain portions of affidavits submitted in support of plaintiff's motion to remand.[3] Plaintiff opposes the motion to strike.[4]

For the following reasons, the Court grants the motion to remand, and denies the motion to strike as moot.

## I.    BACKGROUND

Plaintiff alleges that, on October 3, 2019, decedent Michael Perez was working for defendants Cayo/Aquaterra near the Pointe Celeste Pumping

---

[1]    R. Doc. 6.
[2]    R. Doc. 12.
[3]    R. Doc. 11.
[4]    R. Doc. 17.

Station in Plaquemines Parish, Louisiana, when a piece of metal detached from a crane and fell onto his head, killing him.[5]   On October 1, 2020, Bethany Perez, decedent's spouse and the mother of decedent's two minor children, filed suit in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines, against Cayo, Aquaterra, and Marmac, LLC ("Marmac").[6] Plaintiff's complaint includes claims for Jones Act negligence against Cayo and Aquaterra.[7]

On September 20, 2021, plaintiff moved to dismiss all claims against Marmac, the only nondiverse defendant.[8]   On September 28, 2021, defendants Cayo/Aquaterra removed the case to federal court, contending that, in light of Marmac's dismissal, the diversity requirements of 28 U.S.C. § 1332 were satisfied.[9]   The removing defendants also asserted that, while Jones Act cases are generally nonremovable under 28 U.S.C. § 1445(a), plaintiff's Jones Act claims had been improperly joined, because decedent did not qualify as a seaman at the time of his death.[10]

---

[5]   *See* R. Doc. 1-1 at 3-4.
[6]   *Id.* at 1.
[7]   *Id.* at 4-6.
[8]   R. Doc. 1 at 3.
[9]   *Id.* at 4-5.
[10]   *Id.* at 5-6.

On October 28, 2021, plaintiff moved to remand, arguing that defendants had not shown that plaintiff would be unable to establish a cause of action under the Jones Act.[11]  In support of this contention, plaintiff submits her own affidavit,[12] and an affidavit by Brandon Perez, decedent's brother.[13]   Both affidavits contain statements regarding the affiants' recollections of decedent's job duties while employed for defendants, including his service to the vessel M/V EMMA D.[14]  Plaintiff also argues that it remains to be established whether the Pointe Celeste Pumping Station discharges into navigable waters, as required for seaman status.[15]

Defendants oppose the motion.[16]  They assert that decedent terminated his employment with defendants in March of 2019, and was later rehired in August of 2019.[17]  Defendants accordingly contend that the relevant period for assessing decedent's seaman status is the post-rehiring period from August of 2019 until the incident on October 3, 2019.[18]  Defendants represent that, during this period, decedent was a land-based worker at the Pointe

---

[11]    R. Doc. 6.
[12]    R. Doc. 6-2 (Affidavit of Bethany Perez).
[13]    R. Doc. 6-3 (Affidavit of Brandon Perez).
[14]    R. Doc. 6-2 ¶¶ II-VII; R. Doc. & 6-3. ¶¶ II-IX.
[15]    R. Doc. 6-1 at 5.
[16]    R. Doc. 12.
[17]    *Id.* at 5-10.
[18]    *Id.* at 9-10.

Celeste Pumping Station, and performed no work in service of a vessel in navigation.[19]  Defendants alternatively contend that, even if decedent's entire period of employment—dating back to 2014—forms the basis of his alleged seaman status, he still does not qualify as a Jones Act seaman, because he spent over eighty percent of his time working on land-based construction.[20] Defendants also argue that the pumping station does not discharge into navigable waters.[21]

Concurrent with their opposition to the motion to remand, defendants filed a motion to strike certain portions of the affidavits of Bethany and Brandon Perez.[22]  They argue that affiants' representations regarding decedent's job responsibilities are not based on personal knowledge, and cannot be used to create an issue of fact as to his seaman status.[23]  Plaintiff opposes the motion, contending that the contents of the contested statements are based on personal knowledge acquired through affiants' familial relationships with the decedent.[24]

The Court considers the parties' arguments below.

---

[19]   *Id.* at 10.
[20]   *Id.* at 10-11.
[21]   *Id.* at 11-13.
[22]   R. Doc. 11.
[23]   R. Doc. 11-1 at 3-7.
[24]   R. Doc. 17.

## II.   LEGAL STANDARD

Unless a federal statute expressly provides otherwise, a defendant may remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction over the case.  28 U.S.C. § 1441(a).  The removing party "bears the burden of showing that federal jurisdiction exists and that removal was proper."  *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

Jones Act claims filed in state court are generally not removable to federal court.  *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999); *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (noting that the Jones Act "incorporates the general provisions of the Federal Employers' Liability Act, including 28 U.S.C. § 1445(a), which in turn bars removal").  But defendants may "pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded" or improperly joined in order to prevent removal.  *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995) (quoting *Lackey*, 990 F.2d at 207).  While the Fifth Circuit has "cautioned against pretrying a case to determine removal jurisdiction," the district court has the authority to "use a summary judgment-like procedure" to assess whether the Jones Act claim is improperly joined and, accordingly, if remand

should be denied.  *Id.* at 176.  To meet its burden, the removing party "must show that there is no possibility that the plaintiff would be able to establish a cause of action."  *Lackey*, 990 F.2d at 207 (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981 Unit A)).

      To qualify as a Jones Act seaman, an employee must show (1) that his duties contributed to the function of a navigable vessel or the accomplishment of its mission; and (2) that he had a connection to a vessel in navigation, or to an identifiable group of vessels, that was substantial in terms of both its duration and its nature.  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995).  The purpose of this test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."  *Id.*  As to the duration requirement, "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."  *Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 571 (5th Cir. 2021) (quoting *Chandris*, 515 U.S. at 371).

## III.   DISCUSSION

The parties dispute which time period is relevant for the assessment of decedent's seaman status.  Decedent began working for defendants on May 14, 2014.[25]  He voluntary resigned from employment on March 27, 2019.[26]  He ceased all work for defendants at that time.  Decedent was re-hired to work for defendants in late August of 2019, at which time he was assigned to the Pointe Celeste Pumping Station Project.[27]  At issue is whether his seaman status depends only on the period from August until October of 2019, or rather on the entire span of his employment with defendants, dating back to May of 2014.

A "significant break" in a worker's employment may limit the scope of the court's seaman inquiry.  *In re Patton-Tully Transp. Co.*, 797 F.2d 206, 210 (5th Cir. 1986); *Abram v. Nabors Offshore Corp.*, 439 F. App'x 347, 348 (5th Cir. 2011); *Cypert v. Broussard Bros.*, No. 13-5049, 2014 WL 4207636, at *4-5 (E.D. La. Aug. 25, 2014).  For instance, in *Patton-Tully*, the Fifth

---

[25]   R. Doc. 12-1 ¶ 4 (Declaration of Brenda Berry).

[26]   *Id.* ¶ 5; R. Doc. 12-5 (Payroll Modifications) (Apr. 2, 2019).

[27]   R. Doc. 12-1 ¶ 9 (Declaration of Brenda Berry); R. Doc. 12-3 ¶ 7 (Declaration of Margil Rios) ("In late August 2019, I rehired Michael Perez, who was classified with the new title of 'pile driver.'  Michael Perez was a land-based employee/worker and was then assigned to the [Pointe Celeste Pumping Station] Project where he worked until the date of the incident, October 3, 2019.").

Circuit held that a four-month hiatus in the worker's employment required "separate evaluation of his duties during the re-employment period." 797 F.2d at 210. Accordingly, the court's examination of the worker's seaman status was properly limited to "the six month period of employment prior to his death, rather than . . . his total work history." *Id.*

Here, the parties do not dispute that the decedent resigned from his employment with defendants in late March of 2019. And the evidence submitted by defendants in opposition suggests that decedent intended his resignation to be permanent. Defendants' employment records regarding decedent's resignation include "Notes," which state: "Mike decided to try a different type of work, and decided to join the Union and work less hours and apparently [earn] more money[.] [A]ccording to him he is going to make [$]38 an[] hr and will be able to contribute to a pension plan."[28] And while decedent ultimately returned to seek employment with defendants later in the year, his five-month hiatus compels this Court to confine its seaman analysis to the re-employment period. *See id.* The Court thus looks to decedent's job responsibilities during the period from August 2019 to October 2019, during which the decedent was working on the Pointe Celeste Pumping Station Project.

---

[28]   R. Doc. 12-5 (Payroll Modifications) (Apr. 2, 2019).

Having determined the relevant period, the Court first finds that plaintiff's evidence attempting to connect decedent to the M/V EMMA D is unavailing. Bethany Perez attests that she recalls that decedent was hired in 2014 as a deckhand for the M/V EMMA D,[29] and both Bethany and Brandon Perez attest to recollections regarding decedent's work for the M/V EMMA D. But the most recent dates mentioned by these affiants are 2017 and 2018.[30] For the reasons already given, decedent's job duties during these years—whether vessel-related or otherwise—are irrelevant to the Court's seaman inquiry. Moreover, the record strongly suggests that decedent did no work for the M/V EMMA D during his re-employment period. Defendants submit an affidavit by David Wiseman, the director of defendants' marine operations, who attests that the M/V EMMA D was never used on the Pointe Celeste Pumping Station Project.[31] Indeed, Wiseman states that the M/V EMMA D never came within twenty miles of the Pointe Celeste Pumping Station Project.[32] Wiseman explains that the M/V EMMA D is a 65-ton push/tug boat with an operational draft of 7.5 feet, and was "not able to traverse the drainage canal" at Pointe Celeste.[33] Plaintiff

---

[29]   R. Doc. 6-2 ¶ II (Affidavit of Bethany Perez).
[30]   *See id.* ¶ IV; R. Doc. 6-3 ¶¶ III, V (Affidavit of Brandon Perez).
[31]   R. Doc. 12-4 ¶ 5 (Declaration of David Wiseman).
[32]   *Id.*
[33]   *Id.* ¶¶ 4, 6.

submits no evidence in rebuttal, and therefore fails to identify any means by which decedent could have served the M/V EMMA D during his period of re-employment in 2019.

But despite its prominence in the parties' briefing, the M/V EMMA D is not the only vessel relevant to decedent's seaman status. Defendants' evidence also refers to a spud barge called the KS5538, which was used as part of the Pointe Celeste Pumping Station Project.[34] Specifically, defendants submit an affidavit by Margil Rios, the Project Superintendent who rehired the decedent in August of 2019, and who worked on the Pointe Celeste Pumping Station Project where decedent was killed. Rios attests that the KS5538 was "spudded down in the drainage pool adjacent to the Pointe Celeste Pumping Station," and was "used as a work platform to support a mobile crane that was employed in connection with" the project operations.[35] And while Rios asserts that decedent "was never aboard a barge or other vessel in open water, such as a river, a lake, or larger body of water while assigned to the Project,"[36] Rios concedes that decedent spent some unspecified amount of time "on a barge or other vessel . . . moored in the drainage pool adjacent to the Pumping Station and accessible from the shore

---

34    *See* R. Doc. 12-6 ¶ 3 (Declaration of Margil Rios).
35    *Id.* ¶ 6.
36    *Id.* ¶ 10.

by a gangplank."[37]  This statement appears to refer to the KS5538, but may in fact refer to yet another barge or vessel situated in the drainage pool.  For these reasons, material facts remain in dispute as to whether decedent spent more than thirty percent of his re-employment period at the Pointe Celeste Pumping Station in service of the spud barge KS5538, or indeed some other "barge or vessel . . . moored in the drainage pool."

And critically, a spud barge may qualify as a "vessel in navigation," depending on certain facts pertaining to the barge's uses and navigability.  *See* 1 U.S.C. § 3 (defining a vessel as "every description of watercraft or other artificial contrivance used, *or capable of being used*, as a means of transportation on water") (emphasis added); *see also Stewart v. Dutra Const. Co.*, 543 U.S. 481, 494, 496 (2005) ("A ship long lodged in a drydock or shipyard can again be put to sea, no less than one permanently moored to shore or the ocean floor can be cut loose and made to sail.  The question remains in all cases whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one."); *In re Two-J Ranch, Inc.*, 534 F. Supp. 2d 671, 682 (W.D. La. 2008) (finding that a drydock and spud barge were vessels for Jones Act purposes because "not only were [they] capable of being used for maritime transport,

---

[37]     *Id.*

they actually *were* used for that purpose").  At this stage, defendants have failed to show that the KS5538 does not qualify as a vessel in navigation.  And while defendants assert that the drainage canal at the Project did not discharge into navigable waters, this is a factual dispute that the Court is unable to resolve based on the scant record before it on this motion.

In light of this underdeveloped record, the Court finds that material facts remain in dispute as to decedent's Jones Act status at the time of his death.  Accordingly, defendants have not carried their heavy burden to show that plaintiff has "no possibility" of recovery on her Jones Act claim.  *Lackey*, 990 F.2d at 207 (citation omitted).  Therefore, under 28 U.S.C. § 1445(a), this case was not removable.  This Court must remand the case.

Finally, because the Court does not rely on the contested statements in plaintiff's affidavits to create an issue of fact, the Court need not reach defendants' arguments that any such statements should be struck for lack of personal knowledge.  The motion to strike certain statements in plaintiff's affidavits is therefore denied as moot.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion to remand,[38] and DENIES defendants' motion to strike[39] as moot.  This case is REMANDED to the Twenty-Fifth Judicial District Court for the Parish of Plaquemines.


New Orleans, Louisiana, this __24th__ day of March, 2022.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[38]   R. Doc. 6.
[39]   R. Doc. 11.